IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EYDA MUÑOZ

              Plaintiff,

    v.

ARMSTRONG FLOORING, INC., et al.,

              Defendants.

CIVIL ACTION
NO. 18-1209

**<u>MEMORANDUM</u>**

**SCHMEHL, J.**                                            **JUNE 4, 2019**

      Employers may not discriminate against an applicant or employee based on the individual's national origin. This case involves a "national origin" discrimination and retaliation claim against a native Spanish-speaker born in Puerto Rico. Defendants Armstrong Flooring, Inc. ("AFI") and Deborah Boas move to dismiss Counts II and III of Plaintiff Eyda Muñoz's Second Amended Complaint alleging Ms. Muñoz failed to exhaust her administrative remedies with the Equal Employment Opportunity Commission ("EEOC") before filing this lawsuit, and move to dismiss Count IV alleging Ms. Muñoz failed to exhaust her remedies under the Pennsylvania Human Relations Act. Defendants move in the alternative to dismiss the entire complaint for failing to plead a short plain statement under Federal Rule of Civil Procedure 8(a)(2). Reviewing the documents submitted to the EEOC and construing the pleadings in the light most favorable to the nonmoving party, this Court denies in part and grants in part the Motion to Dismiss. (Docket No. 25).

## I.  FACTS ALLEGED

Plaintiff Eyda Muñoz was born in Puerto Rico and is a native Spanish-speaker. (ECF Docket No. 21, ¶ 13.)  On October 20, 2014, Armstrong World Industries, Inc. ("AWI") hired Ms. Muñoz as a Business Intelligence Analyst.  (Id. at ¶ 16.)  Ms. Muñoz relocated from Indiana to Mount Joy, Pennsylvania to work at AWI.  On April 1, 2016, AWI separated from Armstrong Flooring Industries ("AFI"); AFI emerged as a stand-alone publicly traded company.  (Id. at ¶ 18.)  Following the separation, AFI and AWI forced its employees to re-apply even though they would continue employment with either AWI or AFI.  (Id. at ¶ 19.)  Although Ms. Muñoz requested to keep working at AWI, AFI hired her as a Business Intelligence Analyst.  (Id. at ¶ 21.)

Ms. Muñoz's new supervisor, Deborah Boas, was the "Senior Manager Business Solutions for AFI."  (Id. at ¶ 6.)  During the first meeting between Ms. Boas and Ms. Muñoz, Ms. Boas used profanity/swear words in Spanish like, "puta" (whore), "cabrona" (prick/bitch) and "hija de puta" (son of a bitch).  (Id. at ¶ 25.)  Though offended, Ms. Muñoz did not report this incident.  (Id. at ¶ 26.)  Under this new supervision, Ms. Muñoz had trouble adjusting and began experiencing stomach problems and TMJ which her doctor related to increased stress at work.  (Id. at ¶ 27.)  During Ms. Muñoz's 2016 mid-year review before Ms. Boas, Ms. Muñoz alleges Ms. Boas "was highly condescending and disrespectful towards [Ms. Muñoz], telling [her] she was 'lucky' to have such a high paying job, implying [Ms. Muñoz] was lucky given that her first language from [sic] Spanish and because she was Puerto Rican, and impl[ied] [Ms. Muñoz] did nothing at work and could easily be replaced by one of Boas' daughters."  (Id. at ¶ 28.)  Ms. Boas also made remarks toward Ms. Muñoz regarding her Puerto Rican ethnicity and the fact

that her first language was Spanish. (Id. at ¶ 32.) Specifically, "[o]n one or more occasions Boas made remarks that she did not like when people spoke in languages other than English," knowing that Ms. Muñoz liked to speak to others in her native language. (Id. at ¶ 33.) Ms. Boas also critiqued Ms. Muñoz's work alleging she did not perform the work of an Analyst. (Id. at ¶ 30.) During the review Ms. Muñoz informed Ms. Boas that she was not having any problems at work but casually mentioned that she sometimes struggled to pick up "slang" used in the office because her first language was Spanish. (Id. at ¶ 29.)

After the mid-year review, Ms. Boas altered Ms. Muñoz's duties and imposed restrictions which were not imposed on any other AFI employee. Specifically, Ms. Boas required Ms. Muñoz: personally advise Ms. Boas in advance when she needed to leave work early instead of blocking off the time in the electronic calendar as is usually required; send Ms. Boas email summaries of every meeting Ms. Muñoz attends for Ms. Boas to ensure Ms. Muñoz understood the meeting's subject and purpose; copy Ms. Boas on every email Ms. Muñoz sent even if the email did not relate to Ms. Boas; and finally, always be on Skype so Ms. Boas could make sure Ms. Muñoz was at her desk. (Id. at ¶ 36.)

As a result of her interactions with Ms. Boas, Ms. Muñoz alleges, her medical problems worsened. (Id. at ¶¶ 38-39.) On top of her anxiety and depression, Ms. Muñoz suffered from insomnia and was diagnosed with major depression disorder. (Id. at ¶ 39.) In October of 2016, Ms. Muñoz sent a letter to HR—specifically Victoria Petroskie[1]— requesting assistance regarding Ms. Boas' behavior. (Id. at ¶ 41.) Ms. Petroskie refused

---

[1] Ms. Muñoz's second amended complaint spells Ms. Petroskie's name two different ways: Petroskie and Petrouskie. For consistency, this Court will use the "Petroskie" spelling throughout this Opinion.

to directly assist Ms. Muñoz and instead directed her to the Compliance Manager. (Id. at ¶ 42.) Because of Ms. Muñoz's complaint, certain restrictions were imposed on Ms. Muñoz, such as: 1) an HR employee needed to be present for any meeting between Ms. Muñoz and Ms. Boas; and 2) Ms. Boas needed to be present for every meeting between HR and Ms. Muñoz regarding Ms. Muñoz's issues with Ms. Boas. (Id. at ¶ 43.) But even after this meeting, her behavior allegedly continued as Ms. Boas again demanded Ms. Muñoz provide email summaries of every meeting to confirm Ms. Muñoz understood the meetings. (Id. at ¶ 46.) Again, a policy not imposed on any other AFI employee. (Id. at ¶ 47.)

In early 2017, Ms. Muñoz was assigned the role of Project Manager, Analyst, and Developer for a large project. (Id. at ¶ 49.) Ms. Muñoz's portion of the project—which required a presentation—was due the week of May 8, 2017. (Id. at ¶ 50.) Given her health issues allegedly related to Ms. Boas' conduct, Ms. Muñoz asked Ms. Boas for an extension to complete the project; Ms. Boas declined her request. (Id. at ¶ 52.) As the deadline approached, Ms. Muñoz again requested an extension but instead asked Ms. Boas' supervisor, Greg Beaudoin, as Ms. Boas was away on vacation. (Id. at ¶ 53.) Mr. Beaudoin granted Ms. Muñoz's request for an extension and recommended Ms. Muñoz speak with HR to discuss her options regarding medical leave. (Id. at ¶ 53.) Ms. Boas, upon returning from vacation and learning Ms. Muñoz asked her supervisor for the extension she already denied, informed Ms. Muñoz she would present her portion of the project as scheduled. (Id. at ¶ 56.)

While driving to the presentation, Ms. Muñoz suffered a panic attack and immediately drove to the doctor's office for treatment. (Id. at ¶ 58.) There the doctors

treated Ms. Muñoz for depression and anxiety and recommended she take leave from work. (Id. ¶ 60.) Ms. Muñoz informed AFI she would be out of work until at least May 29, 2017, and obtained documentation for FMLA leave. (Id. at ¶ 61.) On May 29, 2017, Ms. Muñoz's doctor recommended she continue FMLA leave until at least the middle of July. (Id. at ¶ 62.) On July 17, 2017, shortly before returning to work, Ms. Muñoz contacted AFI to "proactively address any problems that might arise when [she] returned to work under Boas" and again request she no longer be mistreated by Ms. Boas. (Id. at ¶ 65.) Ms. Muñoz merely raised the same issues the she raised in her October 2016 letter. (Id. at ¶ 66.) Ms. Muñoz requested she "be treated the same as her coworkers, and that Boas treat her with respect and cease subjecting [her] to a retaliatory, discriminatory and hostile work environment, which had directly caused [her] the need to take leave under the FMLA." (Id. at ¶ 69.) AFI again refused Ms. Muñoz's request. (Id. at ¶ 70.)

Ms. Muñoz returned to work on July 24, 2017, and again contacted Human Resources to address the issues raised in her October 2016 letter. (Id. at ¶ 72.) Ms. Petroskie again informed Ms. Muñoz that nothing could be done and refused to help her. (Id. at ¶ 73.) Sonya Zook, the new Division Manager for AFI, scheduled a meeting with Ms. Muñoz to discuss her work product. (Id. at ¶ 74.) Ms. Zook proceeded to evaluate Ms. Muñoz's work product and eventually read notes provided by Ms. Boas accusing Ms. Muñoz of failing to complete her work and not doing the work of an Analyst. (Id. at ¶ 76.) Without any warning, Ms. Muñoz was terminated and escorted out of the building. (Id. at ¶¶ 76-77.)

Following her termination, on May 11, 2018, Ms. Muñoz filed a charge with the EEOC which the EEOC received on May 15, 2018. (ECF Docket No. 25, at Ex. A.) In

the charge, Ms. Muñoz alleged Defendants engaged in unlawful discriminatory practices in violation of Title VII and the PHRA. (Id.) Ms. Muñoz also requested the EEOC charge be dual-filed with the Pennsylvania Human Relations Commission. (Id.) On May 23, 2018, Ms. Muñoz signed and verified her election to dual-file with the Pennsylvania Human Relations Commission and provided an affidavit verifying the information in the EEOC charge and Second Amended Complaint is true and correct. (ECF Docket No. 26, Ex. D.) On March 20, 2018, Ms. Muñoz filed the instant action. (ECF Docket No. 1.) On September 1, 2018, the EEOC issued a Right to Sue Letter and on October 1, 2018, Ms. Muñoz filed a second amended complaint adding Title VII claims of national origin discrimination and retaliation. (ECF Docket No. 21.) On October 12, 2018, Defendants moved to dismiss Plaintiff's second amended complaint.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

Importantly, "[i]n evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III.   **ANALYSIS**

Armstrong Flooring, Inc. ("AFI") moves to dismiss Ms. Muñoz's second amended complaint claiming she failed to exhaust her administrative remedies under Title VII and the PHRA. AFI also moves to dismiss the second amended complaint alleging Ms. Muñoz failed to properly plead a plausible right to relief under Federal Rule of Civil Procedure 12(b)(6) and failed to provide a short plain statement of under Federal

Rule of Civil Procedure 8(a)(2). And finally, AFI contends that Ms. Muñoz failed to plead facts giving rise to punitive damages. These arguments are addressed below.

A. Exhaustion of Administrative Remedies

When seeking redress for alleged discrimination, the plaintiff must exhaust all administrative remedies before seeking relief in federal court. *McKinney v. Supreme Mid-Atlantic Corporation*, 2018 WL 6182058, at *6 (M.D. Pa. Nov. 27, 2018). Under Title VII, employers are restricted from discriminating against any individual based on the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). When bringing employment discrimination claims, plaintiffs must comply with the requirements of Title VII requiring a complainant file a "charge" with the EEOC which "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). The charge with the EEOC must be filed within 180 days from the date of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The deadline is extended to 300 days if the complainant files a similar charge "in a state with a parallel agency such as the PHRC." *Id.* If unresolved within 180 days after investigating the charge, a right-to-sure letter will issue by the EEOC which is a prerequisite to filing a private action; but while it is mandatory, it is nonjurisdictional. *McKinney*, 2018 WL 6182058, at *6; *see also Burgh v. Borough Council*, 251 F.3d 465, 469-70 (3d Cir. 2001) (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

Armstrong Flooring, Inc. ("AFI") contends Ms. Muñoz failed to exhaust her administrative remedies before alleging Title VII and PHRA violations in federal court. For the reasons below, we conclude Ms. Muñoz exhausted her administrative remedies

with the EEOC and PHRC by verifying her charge as defined by the above regulations and curing the defect before the right-to-sue letter issued.

> i.  *Ms. Muñoz exhausted her administrative remedies with the EEOC.*

AFI argues Ms. Muñoz failed to exhaust her remedies with the EEOC when she failed to satisfy Title VII's verification requirements. EEOC regulations require a charge be in writing and verified, and is considered a "condition precedent" to filing suit. *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 262 (3d Cir. 2006). The EEOC defines "verified" as, "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a) & 1601.9. This verification requirement protects employers from having to respond to frivolous charges which are mooted once the right-to-sue letter issues and the employer is forced to defend the suit. *Buck*, 452 F.3d at 261 (3d Cir. 2006) (citing *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994). But EEOC regulations allow plaintiffs to amend their charges "'to cure technical defects or omissions, including failure to verify the charge[s],' and provide that such amendments 'will relate back to the date the charge was first received.'" 29 C.F.R. § 1601.12(b).

Courts typically deny plaintiffs the right to amend their charges to include the verification after the right-to-sue letter issues as amendment would serve no purpose because there is "no longer a charge pending before the EEOC which is capable of being amended." *Buck*, 452 F.3d at 261 (quoting *Balazs*, 32 F.3d at 157). But, while section 2000e-5(b)'s verification requirement is statutorily required for an EEOC charge, plaintiff's failure to satisfy the verification requirement "does not divest a federal court of

jurisdiction." *Id.* at 262; *see also Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 79 (5th Cir. 1982)). The Supreme Court, comparing provisions within 42 U.S.C. § 2000e–5, concluded:

> the provision requiring such charges to be 'in writing under oath or affirmation,' 42 U.S.C. § 2000e–5(b), 'appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts[.]'

*Id.* at 263 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). The verification requirement, our Court of Appeals explained, should be subject to waiver "when equity so requires." *Id.* at 263 (citing *Price*, 687 F.2d at 77 n.3 ("[W]e do not . . . view the verification element as jurisdictional . . . [C]ourts should remain flexible when reviewing failures of persons unfamiliar with administrative complexities to comply with procedural rules. We should not regard such rules as rigid jurisdictional prerequisites.")).

Construing the verification requirement more flexibly and considering the equitable considerations, our Court of Appeals in *Buck* determined the employer, by failing to raise a lack of verification defense in the agency proceedings, waived its right to secure dismissal in federal court based on a lack of verification. *Id.* at 262. In *Buck*, the plaintiff provided three documents which could have satisfied the statutory requirement but none were signed by the plaintiff herself. The three documents—two intake questionnaires and the formal EEOC charge—were signed by an attorney on the plaintiff's behalf but none were signed under penalty of perjury by the plaintiff. *Id.* at 261. Under these limited circumstances the plaintiff did not satisfy the statute's literal "verification" requirement. *Id.*; *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001) (holding that a "verified intake questionnaire . . . may constitute a charge for purposes of . . . Title VII"); *Kuper v. Colonial Penn Ins. Co.*, No. 99–172,

1999 WL 317077, at *3 (E.D. Pa. May 18, 1999) (holding that an EEOC "questionnaire signed under penalty of perjury" may satisfy "Title VII's oath or affirmation requirement").

Rather than raise plaintiff's failure to verify the charge as a defense before the EEOC, the defendant in *Buck* responded to plaintiff's claim on the merits—after the plaintiff's right to amend the charge had been cut off. *Id.* at 264. Had the defendant responded to the unverified charge by arguing that it did not warrant a response on the merits, the plaintiff would have been forced to make a choice: 1) amend the charge to include the verification under penalty of perjury; or 2) decline to verify the charge after receiving notice of the defect allowing a court to reasonably conclude the charge was frivolous. *Id.* at 264 (citing *Edelman v. Lynchburg College*, 535 U.S. 106, 113 (2002)). The court continued:

> [u]nder these circumstances, the purposes of the statute and the verification requirement would be served: [the plaintiff] would not forfeit her rights inadvertently, and the [defendant] would not be forced to respond to an unverified or frivolous charge.

*Id.* Our Court of Appeals refused to rigidly apply the verification requirement as the verification's purpose—protecting against frivolous claims—would not have been served. *Id.* There the defendants waited until the right-to-sue letter issued to raise the plaintiff's failure to verify which ostensibly cut off the plaintiff's right to amend. Where the employer had the opportunity but fails to challenge the sufficiency at the EEOC stage, the court explained, baring the plaintiff from further proceedings would be "inequitable at best" and fails to further the purpose of the verification requirement. *Id.* The court in *Buck* explained that an employer waives its right to dismissal based on a lack of verification where the employer had actual notice of the discrimination charge and chose

to respond to the merits of the claim before raising a lack of verification defense. *Id.* at 265.

Similarly, the court in *McKinney* concluded that a failure to verify a charge with the EEOC would be excused in "unusual cases" where the employer has actual notice of the discrimination charge and responds to the merits of the EEOC claim before asserting lack of verification. *McKinney*, 2018 WL 6182058, at *6. In *McKinney*, like *Buck*, the plaintiff failed to exhaust the Title VII-related administrative remedies by failing to verify the EEOC charge under penalty of perjury under 42 U.S.C. § 2000e-5(b) before the right-to-sue letter issued. *Id.* at *6. But unlike *Buck*, the court determined the defendant did not waive the right to secure dismissal because the defendant was not provided the substance of the claims and "was explicitly informed that it was not required to respond before the charge was perfected." *Id.* There the defendant raised the verification challenge at the first possible stage thereby raising a successful verification challenge before federal court. *Id.*

Whether non-EEOC charge documents satisfy Title VII's verification requirements depends if the purpose of the requirement would have been served. Like *Buck* and *McKinney*, where the plaintiffs failed to properly verify their EEOC charge, this Court in *Kuper* analyzed whether certain non-EEOC charge documents signed under penalty of perjury constitute verification for purposes of Title VII. *Kuper v. Colonial Penn Ins. Co.*, 1999 WL 317077, at *2 (E.D. Pa. May 18, 1999). There the plaintiff dual-filed his discrimination charge with the PHRC but did not sign or verify the document under oath or affirmation. *Id.* The plaintiff, however, submitted and signed under penalty of perjury a "Conduct-Related Discipline Questionnaire" setting forth the

plaintiff's allegations. *Id.* The plaintiff signed the questionnaire before the defendant was asked to defend the charge but before the right-to-sue letter issued. *Id.* at *3. This Court was required to determine whether signing the Conduct–Related Discipline Questionnaire under penalty of perjury satisfies Title VII's requirement that all charges be filed under oath or affirmation. *Id.* Citing the purpose behind the verification requirement—protecting against frivolous claims—this Court concluded the Conduct-Related Questionnaire signed under penalty of perjury served as a verification of the EEOC charge and allowed the plaintiff's Title VII claim to proceed. *Id.* The questionnaire sufficiently described the allegations contained in the charge and that the defendant received notice of the charge before the right-to-sue letter issued, satisfying the purpose of the verification requirement. *Id.* And while not mandatory, this Court also required the plaintiff submit an affidavit under oath "that the statements contained in the charge . . . are true to the best of his knowledge, information and belief." Id. at *4.

As a failure to verify a charge with the EEOC is not an absolute jurisdictional bar to a civil lawsuit, we must address two issues: 1) whether AFI waived its right to secure dismissal in federal court based on Ms. Muñoz's lack of verification; and 2) whether Ms. Muñoz's signed "Information For Complainants & Election Option to Dual File With The Pennsylvania Human Relations Commission" satisfies Title VII's verification requirement. (ECF Docket No. 26, Ex. C.)

First, as we noted, the verification requirement is excused in "unusual cases" where the employer has notice of the discrimination charge and responds to the merits of the claim without raising a lack of verification defense. It is clear from the record that Ms. Muñoz's EEOC charge lacked the proper verification required under Title VII. (ECF

Docket No. 25, Ex. A. at 1-10.)  Ms. Muñoz filed her charge with the EEOC on May 11, 2018—received by the EEOC on May 15, 2018—and received her right-to-sue letter on September 1, 2018.  While the verification requirement is statutorily required, courts have construed the requirement more flexibly to align with the verification's purpose of preventing frivolous claims.  But employers are less likely to succeed on the merits if they fail to raise a lack of verification defense before the EEOC instead of allowing the claim to proceed to federal court.  Unlike *Buck*, where the defendant raised the plaintiff's failure to verify as a defense after the right-to-sue letter issued, AFI raised Ms. Muñoz's lack of verification at the first possible stage in a letter to the Systemic Enforcement Investigations Coordinator of the EEOC on July 31, 2018.  (ECF Docket No. 28, Ex. A.) Again, unlike *Buck*, AFI did not wait and respond to Ms. Muñoz's claims on the merits; AFI raised the verification defense just two months after Ms. Muñoz filed her charge. (Id.)  Specifically, AFI stated:

> [I]t is clear that Munoz' Charge is not 'verified' as defined by the regulations . . . [a]ccordingly, Munoz's Charge does not satisfy the statute's literal 'verification' requirement. . . . Thus, it is clear that the EEOC regulations require that Munoz's Charges be verified under oath before the employer, AFI, or any of the other named Respondents are obligated to respond to any such Charge.

(Id. at 1-2.)  Given these facts, we would not consider this an "unusual case" requiring us to remedy Ms. Muñoz's failure under equitable considerations.  AFI raised its verification challenge at the first possible stage and notified Ms. Munoz of her failure to verify the EEOC charge.  So, under this analysis, AFI did not waive its right to secure dismissal of the federal court proceedings based on the lack of verification.

Second, certain documents signed under penalty of perjury may satisfy Title VII's requirements that all charges be filed under oath or affirmation.[2] *Kuper*, 1999 WL 317077 at *3. That Ms. Muñoz failed to properly verify her EEOC charge is not fatal to her case as she elected to dual-file the charge of discrimination with the PHRC and the EEOC. In between Ms. Muñoz's unverified EEOC charge and AFI's letter to the EEOC raising lack of verification, Ms. Muñoz filed with the PHRC an "Information For Complainants & Election Option to Dual File With The Pennsylvania Human Relations Commission." (ECF Docket No. 26, Ex. C.) This document signed under penalty of perjury (18 Pa.C.S. § 4909) states: "I want my charge filed with the PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC." (Id.) As we explained, the purpose of the verification requirement is to protect against frivolous claims. The election to dual-file, incorporated into Ms. Muñoz's EEOC complaint, was signed under penalty of perjury. (Id.) And although the document does not describe the allegations contained in Ms. Muñoz's charge, the document and signed verification explicitly incorporate the form and verification into the "attached EEOC complaint." (Id.) Ms. Muñoz also provided a signed affidavit verifying that the statements contained in the charge were true to the best of her knowledge. (Id. at Ex. D.

Indeed, AFI clearly received notice of the charges asserted against it before the right-to-sue letter issued. On May 11, 2018, Ms. Muñoz filed her charge with the EEOC

---

[2] Courts have already determined that questionnaires and letters satisfy the requirements for statute of limitations purposes. *Kuper v. Colonial Penn Ins. Co.*, 1999 WL 317077, at *3 n.4 (E.D. Pa. May 18, 1999); *see also Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 322–25 (7th Cir. 1991) (holding that filing questionnaire not signed under oath or affirmation satisfies statutory time limit requirement); *Peterson v. City of Wichita*, 888 F.2d 1307, 1308–09 (10th Cir. 1989) (holding that unverified complaint constitutes timely charge); *Roche v. Supervalu, Inc.*, No. 97–753, 1999 WL 46226, *6 (E.D. Pa. Jan. 15, 1999) (finding that questionnaire constitutes timely charge).

and allegedly sent a courtesy copy to AFI's in-house counsel that same day. (January 22, 2019, Plaintiff's Letter Brief to this Court.) The EEOC Complaint informed AFI of the charge alleging discrimination based on national origin. (ECF Docket No. 25, Ex. A.) Before AFI raised its lack of verification defense, Ms. Muñoz dual-filed the EEOC complaint with the PHRC which required Ms. Muñoz verify under penalty of perjury the charges against AFI. Under these circumstances, we conclude the election to dual-file—signed under penalty of perjury incorporating the allegations contained in the charge and filed before the right-to-sue letter issued—satisfies Title VII's oath and affirmation requirement.

Though AFI did not waive its right to secure dismissal of these proceedings based on lack of verification, Ms. Muñoz's election to dual-file with the PHRC verified under penalty of perjury satisfies Title VII's verification requirements. This Court will not dismiss Ms. Muñoz's Title VII claims for national origin and retaliation based on lack of verification.

ii.     *Ms. Muñoz exhausted her remedies with the PHRC.*

AFI argues Ms. Muñoz failed to exhaust her remedies under the PHRA because she filed her claim more than 180 days after the last discriminatory event. Under the PHRA, the plaintiff must first file an administrative complaint with the PHRC within 180 days of the alleged discriminatory act. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013); *see also Yeager v. UPMC Horizon*, 698 F.Supp.2d 523, 535 (W.D. Pa. 2010). But a charge filed with the EEOC may be submitted to the PHRC after the state agency's limitation period has expired. *Gabrielle v. Barrett, Haentjens & Co.*, 663 F.Supp. 1187, 1192 (M.D. Pa. 1986) (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750,

765 n.13 (1979); *Sharpe v. Philadelphia Housing Authority*, 693 F.2d 24 (3d Cir. 1982)).

Under the EEOC, complainants are also required to file a charge with the EEOC within

180 days of the employers' alleged discriminatory conduct; this deadline is extended to

300 days if a complainant files a similar charge in a state with a parallel agency like the

PHRC. *McKinney*, 2018 WL 6182058, at *6. (citing *Mandel v. M & Q Packaging

Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (finding 180-day period enlarged to 300 days

given Pennsylvania's status as a "deferral state.")). Specifically, the EEOC states:

> In general, you need to file a charge within 180 calendar days from the
> day the discrimination took place. The 180-calendar day filing deadline is
> extended to 300 calendar days if a state or local agency enforces a law that
> prohibits employment discrimination on the same basis.

U.S. Equal Employment Opportunity Commission, *Time Limits For Filing A Charge*,

*available at* https://www.eeoc.gov/employees/timeliness.cfm.

Where a complainant initially files with the EEOC, the "EEOC must refer the

charges to the state agency" even if the filing is untimely under state law. *Gabrielle*, 663

F.Supp. at 1192. And because a state statute cannot shrink the filing period set by federal

law, a claim filed with the PHRC within 300 days from the alleged unlawful practice

must be deemed timely for federal purposes even though it is untimely for state purposes.

*Nogar v. Henry F. Teichmann, Inc.*, 640 F.Supp. 365, 369 (W.D. Pa. 1985) (citing

*Bonham v. Dresser Indus. Inc.*, 569 F.2d 187, 194 (3d Cir. 1977), *cert. denied*, 439 U.S.

821, 99 (1978).

AFI alleges Ms. Muñoz untimely filed her PHRC claim because the EEOC

received her charge on May 15, 2018, 293 days after her July 26, 2017, termination.

(ECF Docket No. 25, at 12.) Applying 180-day PHRC statute of limitations, AFI

contends the PHRC should have received the charge on or before January 22, 2018. (Id.

at 12-13.)  AFI argues that a filing with the EEOC does not constitute filing with the PHRC and is considered "filed" only when the PHRC receives the document.  (Id.) (citing *Lukus v. Westinghouse Electric Corp.*, 419 A.2d 431, 452 (Pa. Super. Ct. 1980)).

Governing this issue is a work-sharing agreement between the PHRC and the EEOC where each agency waives the right to initially review claims first filed with the other agency.  *Todora v. Neshannock Township School District*, 2016 WL 6433163, at *2 (W.D. Pa.  Oct. 31, 2016).  Specifically, Section II(A) of the work-sharing agreement provides: "EEOC's receipt of charges on the [PHRC]'s behalf will automatically initiate proceedings of both the EEOC and the [PHRC] for the purposes of Section 706(c) and (e)(1) of Title VII."  *Yeager*, 698 F.Supp.2d at 535 (citing Work Sharing Agreement § II(A)).  "In essence, the PHRC and EEOC designate the other as its agent for the purpose of receiving and drafting charges and complaints."  *Id.* (citing *Evans v. Gordon Food Services*, 2015 WL 4566817, at *3 (M.D. Pa. July 29, 2015)).  Yet, the Western District in *Colbert* stated:

> [A] claimant may not rely on the work-share agreement to satisfy all of the requirements of the PHRA to be entitled to the available relief under the PHRA.  *Woodson*, 109 F.3d at 927 (citing *Fye v. Central Transp. Inc.*, 487 Pa. 137, 409 A.2d 2 (1979) ("EEOC procedures are not a sufficient surrogate for PHRC remedies")).  Consequently, a claimant cannot rely on the work-share agreement alone to show that the PHRC received his or her claim, but rather, must show that the PHRC actually received the complaint.  *Id.; Lantz v. Hospital of University of Pennsylvania*, 1996 WL 442795, at *3 (E.D. Pa. July 30, 1996) (citing *Parsons v. Phil. Coordinating Office of Drug & Alcohol Abuse Programs*, 833 F. Supp. 1108, 1114 (E.D. Pa. 1993)).  Under Pennsylvania law, a complaint is deemed filed with the PHRC on the date it is received by the PHRC, regardless of whether the complaint was forwarded to the PHRC by the EEOC or filed by the claimant directly with the PHRC.  16 Pa. Code § 42.14(c); *Cunningham v. Freedom Ford Sales, Inc.*, 2007 WL 2404739, at *4 (W.D. Pa. Aug. 17, 2007) (Gibson, J.) (citing *Barb v. Miles, Inc.*, 861 F. Supp. 356, 361 (W.D. Pa. 1994); 16 Pa.Code § 42.14(c)).

*Colbert v. Mercy Behavioral Health*, 845 F.Supp.2d 633, 638 (W.D. Pa. 2012). The requirements of both agencies, however, would be satisfied where the complainant instructs that agency to dual file with the other. *Todora v. Neshannock Township School District*, 2016 WL 6433163, at *2 (citing *Evans v. Gordon Food Services*, 2015 WL 4566817, at *1 (M.D. Pa. July 29, 2015)).

The EEOC "received" Ms. Muñoz's election to dual-file with the PHRC on May 23, 2018, the date Ms. Muñoz signed the election to dual-file. If we apply the 180-day statutory limit, Ms. Muñoz's claims before the PHRC would be time barred. But when a "state or local agency enforces a law that prohibits employment discrimination on the same basis," like the PHRC, the deadline is extended to 300 days. Applying the 300-day time statutory limit, Ms. Muñoz's charge before the PHRC would ostensibly be time barred as her election to dual-file was signed one-day after the 300-day deadline. While charges received by the EEOC on behalf of the PHRA automatically initiate the proceedings with both agencies, like *Yeager* and *Todora*, the record here does not indicate the EEOC received Ms. Munoz's charge on behalf of the PHRC before the 300-day deadline. [3]

Still, equitable considerations operate to modify the filing requirements here. Equitable tolling is appropriate in three situations:

> (1) where the plaintiff actively pursues his or her judicial remedies during the statutory period but files a defective pleading, such as filing in the wrong forum; (2) where the deadline for filing has passed due to the plaintiff's reliance on his adversary's misconduct or misrepresentation; or (3) where the plaintiff was prevented from asserting his or her rights in some extraordinary way.

---

[3] It is unclear when the EEOC received Ms. Muñoz's election to dual-file her PHRC charge. But for this analysis, the date Ms. Muñoz signed the election document—the earliest the EEOC could have received it—is one day after the 300-day statute of limitation.

*Todora*, 2016 WL 6433163, at *4.  Under the equitable tolling doctrine, the burden is on the plaintiff to show they exercised due diligence in pursuing their claim.  *Id.* (citing *Evans v. Gordon Food Servs.*, 2015 WL 4566817, at *5 (M.D. Pa. July 29, 2015).  Applying these equitable considerations here, the first equitable tolling situation applies as Ms. Muñoz actively pursued her claim under the EEOC and PHRA during the statutory period but filed a defective pleading.  Specifically, Ms. Muñoz's charge before the EEOC states: "Complainant requests this charge be dual filed with the Pennsylvania Human Relations Commission."  (ECF Docket No. 25, Ex. A.)  It is apparent on the face of her EEOC charge—received within the statutory period—Ms. Muñoz intended to pursue claims under the PHRA when she filed a formal charge of discrimination with the EEOC and then submitted her election to dual-file with the PHRC.  The EEOC charge clearly supports Ms. Muñoz's intent to dual-file her charge within the 300-day period.

Although Ms. Muñoz signed and verified the election to dual-file with the PHRC one day after the 300-day period, Ms. Muñoz's PHRA claim is not time barred after applying equitable tolling considerations.

B.  Federal Rule of Civil Procedure 8(a)(2)

AFI argues Ms. Muñoz's complaint contains numerous allegations that are not connected to any cause of action and contain conclusory statements in violation of Federal Rule of Civil Procedure 8.  Under Federal Rule of Civil Procedure 8(a)(2), a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8. AFI, relying on this Court, argues Ms. Muñoz used a "shotgun pleading approach" where the pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Bartol v. Barrowclough*, 251 F.Supp.3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015)).

Ms. Muñoz's complaint is only seventeen pages long and brings four causes of action against two separate defendants; this hardly constitutes a "shotgun pleading" as defined by the Eleventh Circuit and adopted by courts within the Third Circuit. Unlike *Bartol*, where the fifty-four-page complaint and thirteen causes of action against more than seven defendants made it difficult for the defendants to determine the claims brought against them, AFI and Ms. Boas are aware of the discrimination claims against them and can present a meaningful defense. While this Court recognizes Ms. Muñoz's Complaint contains conclusory statements regarding "harassment" and "hostile work environment," Ms. Muñoz never explicitly raises these causes of action against AFI in her second amended complaint. So we will not assume Ms. Muñoz intended to bring these claims against AFI as she had ample opportunity to amend her complaint to include these causes of action.

The harm usually created by a "shotgun pleading" is not present here as AFI and Ms. Boas received adequate notice of the claims against them and the grounds upon which each claim rests. The rest is mere surplusage.

C.  Federal Rule of Civil Procedure 12(b)(6)[4]

AFI alleges Ms. Muñoz's claims for National Origin discrimination and Retaliation should be dismissed because Ms. Muñoz fails to allege a plausible right to relief under Federal Rule of Civil Procedure 12(b)(6).  AFI also alleges the Title VII claims against Ms. Boas should be dismissed as liability does not extend to individual employees.  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Applying this standard, and for the reasons below, Ms. Muñoz's pleaded a plausible right to relief against AFI for retaliation for exercise and use of FMLA and national origin discrimination and retaliation under Title VII.  And Ms. Muñoz pleaded a plausible right to relief against Ms. Boas for retaliation for the exercise and use of FMLA.  But Ms. Muñoz's Title VII claims against Ms. Boas—national origin discrimination and retaliation—will be dismissed as liability does not extend to individual employees.

i.  *Ms. Muñoz pleads a plausible right to relief for National Origin Discrimination under Title VII*

Title VII precludes employers from discriminating against any individual based on the individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e–2(a)(1).  To establish a *prima facie* case for national origin discrimination, the plaintiff

---

[4] AFI argues Ms. Muñoz fails to plead a right to relief for "harassment" and "hostile work environment." But, Ms. Muñoz does not include these causes of action in the second amended complaint.  However, if Ms. Muñoz had pleaded claims for harassment and hostile work environment, her claims for relief would fail.  Ms. Muñoz does not allege the discrimination was sufficiently severe and pervasive to create an abusive working environment.  *Smith v. Giant Eagle, Inc.*, 2011 WL 1706520, *3 (W.D. Pa. May 4, 2011).

must show: "(1) [they were] a member of a protected class; (2) [they were] qualified for and satisfactorily performed [their] job; (3) [they] suffered an adverse employment action; and (4) the circumstances of the adverse employment action would give rise to an inference of discrimination." *Fekade v. Lincoln University*, 167 F.Supp.2d 731, 741 (E.D. Pa. 2001); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973) (explaining the *prima facie* case will often vary depending on cases' unique facts).

While "national origin" is not explicitly defined by Congress or the EEOC, the EEOC broadly defines "national origin discrimination" as, "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." *Kanaji v. Children's Hosp. of Philadelphia*, 276 F.Supp.2d 399, 402 (E.D. Pa. 2003) (quoting 29 C.F.R. § 1606.1). Discrimination applies to the "place of origin" and not "country of origin"; our Court of Appeals recognizes discrimination "generally is triggered by a person's physical or behavioral traits that reflect his or her membership in a protected class." *Id.* Specifically, the court stated:

> We think unlawful discrimination must be based on [the plaintiff's] objective appearance to others, not his subjective feelings about his own ethnicity. Discrimination stems from a reliance on immaterial outward appearances that stereotype an individual with imagined, usually undesirable, characteristics thought to be common to members of the group that shares these superficial traits. It results in a stubborn refusal to judge a person on his merits as a human being. Our various statutes against discrimination express the policy that this refusal to judge people who belong to various, particularly disadvantaged, groups is too costly to be tolerated in a society committed to equal individual liberty and opportunity.

*Id.* at 403 (quoting *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 173 (3d Cir. 1991)). In *Kanaji*, taking into consideration defendant's conduct toward plaintiff and plaintiff's

speech, dress, and other outward displays of "African" national origin, this Court concluded plaintiff pleaded a *prima facie* case of national origin discrimination under Title VII. *Id.* Similarly, the EEOC implicitly shares this view:

> In order to have a claim of national origin discrimination under Title VII, it is not necessary to show that the alleged discriminator knew the particular national origin group to which the complainant belonged.... [I]t is enough to show that the complainant was treated differently because of his or her foreign accent, appearance or physical characteristics.

*Id.* at 403 n.5 (quoting 45 Fed.Reg. at 85633).

Our Court of appeals defines adverse employment action as an action serious and tangible enough "to alter an employee's compensation, terms, conditions, or privileges of employment." *Rosati v. Colello*, 94 F.Supp.3d 704, 714 (E.D. Pa. 2015) (citing *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Specifically, the court stated, "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." *Id.* (citing *Langley v. Merck & Co., Inc.*, 186 Fed.Appx. 258, 260 (3d Cir. 2006)). But a transfer not resulting in lost pay or rank may "sometimes constitute an adverse employment action if the new assignment was less desirable." *Zelinski v. Pennsylvania State Police*, 108 Fed.Appx. 700, 705–06 (3d Cir. 2004) (non-precedential). This Court has also concluded that unnecessary derogatory comments do not rise to the level of adverse employment actions. *Rosati*, 94 F.Supp.3d at 714.

In *Rosati*, the defendant made comments to the plaintiff regarding her pregnancy, such as whether "she was getting fixed" or "keeping the baby." *Id.* This Court refused to allow derogatory comments rise to the level of adverse employment actions serious and tangible enough to "alter an employee's compensation, terms, conditions, or privileges of

employment." *Id.* The Defendant in *Rosati* also allegedly assigned extra responsibilities to the plaintiff like requiring the plaintiff file "fifteen monthly reports and four or five weekly reports . . . which should have been done by a supervisor, and not a police officer." *Id.* at 711. The plaintiff argued these assignments were given to her because of her sex. This Court rejected the plaintiff's argument as there were no allegations that the assignments from the defendant materially altered the terms or conditions of the plaintiff's employment." *Id.* at 714. Specifically, this Court concluded, "[the plaintiff's] assertions that she alone received certain extra assignments from [the defendant], and that he specifically assigned them to her because of her sex, are unsupported and conclusory." *Id.* at 715.

Ms. Muñoz alleges national origin discrimination following AFI's separation from AWI. As explained above, Ms. Muñoz alleges her new immediate supervisor—Deborah Boas—singled her out for no reason other than her national origin. (Id. at ¶ 24.) Specifically, Ms. Muñoz alleges Ms. Boas stated, "the only Spanish words she knew were profanity/swear works [sic], like 'puta' (whore), 'cabrona' (prick/bitch) and 'hija de puta' (son of a bitch)." (ECF Docket No. 21, at ¶ 25.) During Ms. Muñoz's mid-year review, Ms. Boas told Ms. Muñoz she was "lucky" to have such a high paying job, implying that she did nothing at work "and could easily be replaced by on of Boas' daughters." (Id. at ¶ 28.) During this review, Ms. Boas critiqued Ms. Muñoz's work product and claimed she "failed to perform any work that an analyst was expected to perform." (Id. at ¶ 30.) Ms. Boas also made remarks regarding Spanish as Ms. Muñoz's first language and that Ms. Boas did not like when others did not speak English around her. (Id. at ¶¶ 32-33.)

The arbitrary rules imposed only on Ms. Muñoz and not any of the other employees leading to Ms. Muñoz's termination is sufficient to rise to the level of an adverse employment action. (Id. at ¶36.) As detailed above, Ms. Boas made Ms. Muñoz advise Ms. Boas of when she would leave during the work day for a doctors' appointment, rather than using the electronic calendar; Ms. Boas forced Ms. Muñoz to send her email summaries of every meeting Ms. Muñoz attended "so Boas could verify that Plaintiff understood the meeting's subject and purpose to Boas' satisfaction" given that Spanish was her first language, but did not ask for email summaries from English speaking employees; and Ms. Boas required Ms. Muñoz copy her on every email even if it did not relate to Ms. Boas. (Id.) According to Ms. Muñoz, no other similarly situated AFI employees were required to follow those rules. (Id. at ¶ 37.) Ms. Muñoz contacted HR in July of 2017 for a meeting to address the issues her and Ms. Boas were having in an effort to stop the discriminatory behavior. (Id. at ¶ 65.) Ms. Muñoz requested she merely be treated like her coworkers. (Id. at ¶ 69.) But according to Ms. Muñoz, AFI refused. (Id. at ¶ 70.) After lodging her complaints, Ms. Muñoz attended a meeting with Sonya Zook—AFI's new Division Manager—to discuss Ms. Muñoz's work product. (Id. at ¶ 74.) Ms. Zook read statements made by Ms. Boas regarding Ms. Muñoz's work product where Ms. Boas accused Ms. Muñoz of failing to regularly complete her work. (Id. at ¶ 76.) Ms. Zook then terminated Ms. Muñoz. (Id.)

In addition to arguing Ms. Muñoz's Title VII claim is untimely, AFI contends nothing in the second amended complaint amounts to an "adverse employment action" as such an action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits." (ECF Docket No. 25, at 17) (citing *Reynolds v. Dep't of Army*, 439 Fed.Appx. 150, 153 (3d Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). AFI also contends Ms. Muñoz fails to provide evidence of national origin discrimination aside from claiming that she is Puerto Rican and that Spanish is her first language. (ECF Docket No. 25, at 18.) Also, given Ms. Boas' comments occurred a year before Ms. Muñoz's termination, AFI argues, Ms. Muñoz fails to connect the comments to her termination giving rise to national origin discrimination.

The record before us suggests Ms. Muñoz was subjected to discrimination based on her national origin and, like *Kanaji*, Ms. Muñoz was "treated differently because of [ ] her foreign accent, appearance or physical characteristics." *Kanaji*, 276 F.Supp.2d 399 at 403 n.5. Ms. Muñoz has pleaded a plausible right to relief under national origin discrimination because: she is a member of a protected class as she is from Puerto Rico and is a native Spanish speaker; she was qualified for the position as she received positive reviews from her former supervisor and was re-hired for the same position after AFI and AWI separated; and, she suffered an adverse employment action as Ms. Boas' arbitrary rules were only imposed on Ms. Muñoz which lead to Ms. Muñoz's termination.

Regarding Ms. Muñoz's adverse employment action, the events leading up to Ms. Muñoz's termination, like Ms. Boas imposing arbitrary rules against Ms. Muñoz, coupled with Ms. Muñoz's termination, rises to the level of an adverse employment action. Termination of one's employment is clearly an adverse employment action. Unlike *Rosati*, where the defendant made comments about the plaintiff's pregnancy—like whether "she was getting fixed" or "keeping the baby"—Ms. Boas made derogatory

comments regarding Ms. Muñoz's national origin, altered her job duties by imposing arbitrary responsibilities based on her national origin, and then eventually created the basis for Ms. Muñoz's termination. Taken together, these actions give rise to an adverse employment action. This Court in *Rosati* concluded that derogatory comments do not rise to the level of adverse employment actions because they were not serious enough to "alter an employee's compensation, terms, conditions, or privileges of employment." *Rosati v. Colello*, 94 F.Supp.3d at 714. But here, Ms. Boas' actions were serious enough to alter Ms. Muñoz's employment terms and conditions. Ms. Boas' actions raise the inference of discrimination based on national origin as Ms. Muñoz pleaded Ms. Boas required she perform many of these arbitrary tasks because of her status as a native Spanish speaker. And unlike the plaintiff in *Rosati*, Ms. Muñoz was terminated. As a matter of law, the derogatory comments and subsequent termination are enough to plead a *prima facie* case for employment discrimination.

As the facts pleaded by Ms. Munoz give rise to an inference of discrimination, we will deny the motion to dismiss national origin discrimination.

ii. *Ms. Muñoz pleads a plausible right to relief for Retaliation under Title VII.*

Under Title VII's anti-retaliation clause, employers may not retaliate against employees who oppose or complain about discriminatory treatment. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015); *see also McCabe v. Mutual Aid Ambulance Service, Inc.*, 2015 WL 4715260, at *4 (W.D. Pa. Aug. 7, 2015). A *prima facie* case for Retaliation under Title VII requires plaintiff show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity

and the employer's adverse action." *Allstate Ins. Co.*, 778 F.3d at 449 (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002)).

An adverse employment action requires a "materially adverse change in the terms and conditions" of the employment. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006). As explained by the Supreme Court, a materially adverse action depends on the facts of the case and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* at 71 (quoting *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75 (1998)). And so, a "reassignment of job duties is not automatically actionable." *Id.* To establish a causal link between the employee's protected activity and the adverse action, the timing of the alleged retaliatory action must be "unusually suggestive" of retaliatory motive. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)). But our Court of Appeals is split on whether the timing of the alleged retaliatory action alone can ever support a finding of causation. *Id.*; *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (stating in dicta that "temporal proximity between the protected activity and the termination is sufficient to establish a causal link"); *but see Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 n.10 (3d Cir. 1996) (stating "timing alone will not suffice to prove retaliatory motive").

AFI argues Ms. Muñoz's second amended complaint lacks sufficient details surrounding the circumstances of the retaliation. (ECF Docket No. 25, at 19-20.) The second amended complaint, AFI contends, also lacks timely allegations or any attempt to connect Ms. Muñoz's alleged complaint to her termination nine months later. (Id. at 20.)

According to AFI, Ms. Muñoz merely provides conclusory allegations and speculation regarding her perceived national origin discrimination while working for AFI. (Id.) Ms. Muñoz claims she was terminated because of her national origin; however, AFI argues the nine-month period between the time she allegedly complained of the discriminatory behavior and the termination "is not unusually suggestive of a retaliatory motive." (Id.)

Based on the record before us, Ms. Muñoz pleads a plausible right to relief for retaliation by AFI under Title VII. First, Ms. Muñoz alleges she complained of Ms. Boas' discriminatory behavior to HR in October of 2016. (ECF Docket No. 21, at ¶¶ 41-42.) Ms. Petroskie refused to directly assist Ms. Muñoz and directed her to AFI's Compliance Manager. After meeting with AFI's compliance manager, AFI imposed two conditions on Ms. Muñoz: 1) an HR employee needed to be present for any meeting between Ms. Muñoz and Ms. Boas; and 2) Ms. Boas needed to be present for any meeting between HR and Ms. Muñoz regarding her issues with Ms. Boas. (Id. at ¶ 43.) Ms. Boas also demanded Ms. Muñoz provide email summaries of every meeting Ms. Muñoz attended to "confirm that [Ms. Muñoz] understood the meetings"—something Ms. Boas did not require from any other employee under her supervision. (Id. at ¶¶ 46-48.) Ms. Muñoz's complaints to Human Resources and Compliance, she alleges, further increased Ms. Boas' arbitrary demands. (Id.)

Second, and contemporaneous to the adverse action, Ms. Muñoz complained of Ms. Boas' behavior and "proactively address[ed] any problems that might arise when [she] returned to work under Boas, to ensure [she] would no longer be subjected to a discriminatory and hostile work environment." (Id. at ¶ 65.) Ms. Muñoz again raised these issues with AFI and again requested Ms. Boas treat Ms. Muñoz like she treated

other employees at AFI. (Id. at ¶ 69.) AFI declined her request. (Id. ¶ 70.) On July 24, 2017, Ms. Muñoz returned to work following her leave of absence and again complained to Ms. Petroskie. During the July 26, 2017, meeting, discussed above, Ms. Zook "read some notes from Boas, which included statements [from Boas] that back in October 2016, Boas did not see [Ms. Muñoz] performing any work as an Analyst, that [Ms. Muñoz] was failing to complete her work, and therefore, [Ms. Muñoz] was to be terminated immediately." (Id. at ¶ 76.) Ms. Muñoz alleges AFI's reasons for firing her were pretextual. (Id. at ¶¶ 78-79.)

It is evident Ms. Muñoz engaged in protected activity as she complained of Ms. Boas' discrimination to multiple supervisors like Ms. Petroskie, AFI's Compliance Manager, and Ms. Zook. Ms. Muñoz also suffered adverse employment actions twice after complaining of Ms. Boas' discrimination and harassment: 1) AFI and Boas forced Ms. Muñoz to effectively report to Ms. Boas after every meeting she attended, even if the meeting did not involve Ms. Boas; and 2) AFI terminated Ms. Muñoz two days after she requested "Boas treat her with respect and cease subjecting [her] to a retaliatory, discriminatory and hostile work environment" which directly caused Ms. Muñoz to take leave under the FMLA. Ms. Muñoz certainly alleges a causal connection exists between Ms. Muñoz complaints and her termination as AFI terminated her shortly after returning to work and complaining about Ms. Boas' behavior.

As the facts pleaded establish a *prima facie* case of retaliation, we will deny the motion to dismiss retaliation under Title VII.

        *iii.    Ms. Muñoz fails to plead a plausible right to relief against Ms. Boas as an individual employee under Title VII (Count II and III).*

AFI argues the individual claims against Ms. Boas under Title VII should be dismissed because Title VII liability does not extend to individual employees. Our Court of Appeals states, a "clear majority of the courts of appeals that have considered this question have held that individual employees cannot be held liable under Title VII." *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996); *see also Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1011, (1995); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir. 1994), *cert. denied*, 513 U.S. 1015 (1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993), *cert. denied*, 510 U.S. 1109 (1994). Because Title VII liability does not extend to individual employees, the Title VII causes of action (Count II and III) against Ms. Boas will be dismissed.

    D.  <u>Punitive Damages</u>

Punitive damages are available under Title VII but are limited to cases where the employer engages in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 530 (1999) (citing 42 U.S.C. § 1981a(b)(1)). AFI argues punitive damages are not warranted because Ms. Muñoz fails to plead AFI engaged in discriminatory practices with malice or reckless indifference. (ECF Docket No. 25, at 26.) We disagree as Ms. Muñoz sufficiently pleaded a right to punitive damages under Title VII.

AFI also argues punitive damages are not available under the PHRA. (Id.) Citing *Hoy v. Angelone*, 691 A.2d 476, 483 (Pa. Super. Ct. 1997), AFI claims punitive damages are unrecoverable under the PHRA and all such claims should be dismissed. But this Court has declined to follow *Hoy* as several cases decided before *Hoy* awarded punitive damages under the PHRA. *Kim v. City of Philadelphia*, 1997 WL 277357, at *2 (E.D. Pa. May 21,1997). "They have reasoned that punitive damages are an appropriate remedy under the PHRA because although Title VII does not allow for punitive damages, the PHRA authorizes relief beyond that provided by the federal law, including 'any other legal or equitable relief as the court deems appropriate[.]'" *Id.* (quoting PA ST 43 P.S. § 962). Whether punitive damages are recoverable under the PHRA requires this Court "give proper regard to Pennsylvania's intermediate courts." *Id.* (citing *City of Erie v. Guaranty Nat. Ins. Co.*, 109 F.3d 156, 159–60 (3d Cir. 1997)). This Court in *Kim* predicted the Supreme Court of Pennsylvania would not adopt the rationale in *Hoy* but would "adopt the reasoning of the persuasive line of federal cases which have permitted punitive damages under the PHRA." *Id.* We will do the same and conclude punitive damages are recoverable under the PHRA at this stage.

AFI may raise the issue again at summary judgment if, after conducting discovery, no genuine issue of material fact exists regarding punitive damages and AFI's conduct.

## IV.    CONCLUSION

In the accompanying order, this Court denies in part and grants in part AFI's motion to dismiss. This Court denies AFI's motion in part because Ms. Muñoz exhausted her remedies under both Title VII and PHRA, and she properly pleaded a plausible right

to relief for all causes of action. Also, Ms. Muñoz sufficiently pleaded a claim for punitive damages.

This Court grants AFI's motion in part dismissing Counts II and III against Ms. Boas as individuals cannot be held personally liable for violations under Title VII. Accordingly, Counts II and III against Ms. Boas will be dismissed.

All other claims will remain as pleaded.